

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00253-CR

---

JOE DALE JOHNSON                                                      APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
TRIAL COURT NO. 48,790-C

----------

## OPINION ON EN BANC RECONSIDERATION

----------

We grant the State's motion for en banc reconsideration, withdraw and vacate our February 14, 2013 memorandum opinion and judgment, and substitute the following. *See* Tex. R. App. P. 49.7.

Appellant Joe Dale Johnson appeals from his convictions for two counts of aggravated sexual assault of a child and one count of indecency with a child. For the following reasons, we affirm Johnson's two convictions for aggravated sexual

assault of a child but reverse the trial court's judgment of conviction for indecency with a child and enter a judgment of acquittal on that count.

## I. BACKGROUND

### A. FACTS

It is undisputed that H.H. was troubled. In the fall of 2007 when he was thirteen, H.H. was suffering from depression, was bullied at school, was interested in pornography, had been caught shoplifting, and had a "strained" relationship with his mother. Indeed, H.H.'s father and mother had placed him in counseling to address these issues.

Johnson, who was in his fifties, was a lay leader at the church that H.H. and his family began attending in 2005. Johnson and H.H. began spending time together, and H.H. began mowing Johnson's lawn for extra money when he was twelve. In the spring of 2007, shortly before H.H. turned thirteen and when he was alone with Johnson at Johnson's house, Johnson asked to see H.H.'s penis. H.H. complied because he felt indebted to Johnson for all the time Johnson spent with him. Johnson then showed H.H. "some pornography that he had downloaded to his computer." H.H. admitted this was not the first time he had seen pornography. Johnson persuaded H.H. to allow Johnson to fellate H.H. while H.H. watched the pornography. Johnson fellated H.H. until H.H. ejaculated. Johnson then told H.H. to fellate him, which H.H. did "for five seconds" but stopped "because [H.H.] didn't like it." Johnson and H.H. then left the house and mowed Johnson's lawn. Johnson paid H.H. $50 that day.

2

Johnson took H.H. to Wal-Mart, and H.H. "spent just about every bit of cash that [Johnson] gave [H.H.] that day for mowing his lawn and doing the sexual [acts]."

In August 2007, Johnson gave a Nintendo DS gaming system to the youth group at the church. Johnson previously had told H.H. that he would get H.H. a Nintendo DS if H.H. did "something else" to "earn the DS." H.H. then wrote Johnson a note, which he never delivered to Johnson, stating that the "something else" was H.H. keeping secrets, "lying to [his] parents, and [his] friendship" with Johnson. It appears that Johnson gave the Nintendo DS to H.H. at church but told H.H. to say that Johnson had donated it to the youth group. The church decided not to allow the youth group to use the Nintendo DS.

H.H. "was at first pretty angry that [he] didn't get the DS like [he] wanted" but then thanked the youth-group leader for not allowing the group to use the DS. When the youth-group leader asked why H.H. was so thankful, H.H. said, "[W]ell, let's just say I can't tell you." The youth-group leader pressed H.H., and H.H. told "everything" that had happened between himself and Johnson. H.H. stated that he "felt better, like a weight off [his] shoulders." The youth-group leader told H.H.'s parents about H.H.'s outcry, and H.H.'s parents reported it to the police. Johnson was arrested on December 6, 2007.

## B. PROCEDURE

### 1. Pretrial

On October 7, 2009, Johnson was indicted for (1) aggravated sexual assault of a child by causing H.H.'s sexual organ to contact Johnson's mouth;

3

(2) aggravated sexual assault of a child by causing the penetration of H.H's mouth by Johnson's sexual organ; and (3) indecency with a child by touching H.H.'s genitals. *See* Tex. Penal Code Ann. § 21.11(a) (West 2011), § 22.021(a) (West Supp. 2014). The indictment contained an enhancement paragraph alleging that Johnson had been previously convicted in 1980 of aggravated sodomy in Kansas. *See id.* § 12.42 (West Supp. 2014).

Before trial, the State gave notice that it intended to introduce evidence that Johnson had been convicted of (1) aggravated sodomy of G.M. in 1980 in Kansas; (2) aggravated sodomy of B.B. in 1982 in Kansas; and (3) indecent liberties with a child in 1982 in Kansas. The State also notified Johnson that it intended to call G.M. as a witness. Johnson filed a motion to suppress the admission of these convictions, and the trial court deferred its ruling until the convictions were offered at trial.

Also before trial, Johnson asserted that a recently-discovered juvenile adjudication against H.H. was admissible as impeachment evidence. The State agreed to produce "any convictions admissible for impeachment purposes as to [its] witnesses that is within the knowledge of the [State]." At the time of the pretrial hearing, the State did not have any specific information regarding H.H.'s juvenile adjudication but knew that it was a sexual offense and that the adjudication occurred "months or almost a year" after H.H.'s outcry against Johnson. The trial court deferred a final ruling on the adjudication's admissibility until trial.

4

## 2. Trial

During opening arguments to the jury, defense counsel asserted that H.H. had fabricated the allegations against Johnson:

> And I will submit to you, ladies and gentlemen, this witness [H.H] has admitted that he lies on occasion. You're going to hear that this witness has been addicted to porn since he was ten years old in Delaware.
>
> You're going to see that this witness, this 13, almost 14-year-old witness, is not your regular, normal 13, almost 14-year-old boy. And the D.A. is going to want y'all to base y'all's decision on this witness and potentially send my client to prison for the rest of his life.
>
> Ladies and gentlemen, you're going to hear that this witness wanted a . . . Nintendo DS. He was so upset about it that he wrote a note and then seven months later, he makes up this story that something happened seven months earlier.

The State first called H.H.'s father (Father) as a witness. Father testified to the relationship between H.H. and Johnson and that Father had stopped it in June 2007. He also testified that he was aware that H.H. "had looked at pornography in the past." On cross-examination, Johnson's counsel, after gaining the trial court's permission, asked Father if H.H. was in counseling in November 2007 at the time of H.H.'s outcry. Father confirmed that he and H.H.'s mother put H.H. in counseling because H.H. was depressed, had issues at school, and was viewing pornography. Defense counsel also elicited from Father that H.H. had "gotten in trouble" for shoplifting around the time of the outcry. On redirect examination, the State briefly clarified with Father that he and H.H.'s mother had "initiated" the counseling.

5

H.H. testified to his relationship with Johnson and its progression from "hanging out" to fellatio and pornography. On cross-examination by defense counsel, H.H. confirmed that he had been watching pornography since the age of ten. He stated that he believed he began voluntary counseling after the incident with Johnson in the summer of 2007 and continued until April 2008. Defense counsel got H.H. to agree that when he did not get the Nintendo DS from Johnson, H.H. knew he "could make an accusation of sexual abuse and get somebody in trouble."

Outside of the presence of the jury, H.H. admitted that he "had been sexually abusing [his] sister for a number of years." Indeed, H.H.'s juvenile adjudication, which was admitted for appellate purposes only, showed that he was adjudicated for delinquent conduct on July 18, 2008, and ordered into sex-offender treatment. *See* Tex. R. Evid. 103(b). Johnson asked for admission of this evidence to show H.H.'s "emotional state in November of 2007 [a]ffecting his perceptions and thoughts" and "that his motive for [accusing Johnson] was not only for deception, but to get attention." The State objected to the testimony because the 2008 conviction was not relevant to Johnson's fabrication theory and because the juvenile adjudication was inadmissible under rule 609. *See* Tex. R. Evid. 609. The trial court sustained the State's objection and did not allow admission of H.H.'s juvenile adjudication. But the trial court allowed Johnson to inquire into the shoplifting accusation. Indeed, H.H. admitted that he had been caught shoplifting "close to the time" he accused Johnson.

The State also called G.M. as a witness and explained his testimony would rebut Johnson's theory that H.H. fabricated his accusation against Johnson:

> [I]t's rebuttal of the defense's theory that has been put forward so far. What it is, is his name is [G.M.], Your Honor. He is . . . now a 44-year-old man who . . . we believe can testify that he was molested by Joe Johnson under almost mirror like circumstance in 1979 . . . .
>
>     . . . I can point to numerous instances before and throughout this trial that we believe the door has been opened to the fabrication, frame up, retaliation defense, Your Honor.

Over Johnson's objection, the trial court concluded that G.M.'s testimony would be relevant to rebut the defensive theory of the case and would not be unduly prejudicial: "[T]he defense of fabrication has come through loud and clear from the time of the voir dire of the Jury on up and through the examination of the last witness. So I'm going to allow it in. . . ." G.M. testified that Johnson, who was in his twenties at the time, promised "to give [him] stuff if [he would] let [Johnson] suck [him]" when G.M. was thirteen years' old. Indeed, Johnson fellated G.M., and G.M. reciprocated "[b]ecause [G.M.] wanted a motorcycle."

In his closing argument to the jury, Johnson's counsel again stressed that H.H. was not credible and had multiple reasons to fabricate the allegations against Johnson:

> There's no other evidence to support [H.H.'s] allegation. . . . So it comes down . . . to that one witness case, whether he's credible or not.
>
>     . . . .

7

So the investigation was bad in this case. And [the investigating officer] doesn't even know he's having trouble at school. He doesn't have any friends. This is an emotionally troubled kid who I would suggest to you is showing antisocial traits at the time. . . . Can you really understand what's going on in this kid's mind during this timeframe? Doesn't have friends at school, the relationship with his mother is not good, the relationship with his father's no good, he's looking at pornography, he's in counseling, he's shoplifting. This is a kid who you cannot trust at this timeframe.

. . . .

Instead of buying [H.H. a Nintendo DS], he gives it to the church, so [H.H.] gets mad, sure he does. Right around this time in November, [Johnson] gives this Nintendo to the church and [H.H.] gets mad. So here we have this kid who is all emotionally troubled, emotionally in counseling and he doesn't get what he wants and he reacts and he's irritated.

. . . .

Also folks, [H.H.'s] needing attention during this timeframe and he's getting it from [the youth-group leader]. He's trying to make [the youth-group leader] feel sympathetic towards him so he has a friend. [The youth-group leader] had been sexually molested and so [H.H.] says, okay, well, I have too.

The jury found Johnson guilty of all three counts, found the enhancement paragraph true, and assessed his punishment at life confinement for each count. The trial court entered judgments accordingly and ordered the sentences to run consecutively. See Tex. Code Crim. Proc. Ann. art. 42.08(a) (West Supp. 2014). Johnson appeals and argues that (1) the trial court abused its discretion by excluding evidence that H.H. had sexually assaulted his sister and had been adjudicated for engaging in delinquent conduct; (2) the trial court abused its discretion by admitting evidence of Johnson's 1980 conviction for the aggravated

8

sodomy of G.M. at the guilt-innocence phase of trial; and (3) his conviction for indecency with a child by contact was subsumed into the first count of aggravated sexual assault of a child, rendering the dual convictions a violation of double jeopardy.

## II. ADMISSION AND EXCLUSION OF EVIDENCE

### A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); *Robbins v. State,* 88 S.W.3d 256, 259–60 (Tex. Crim. App. 2002); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We must uphold the trial court's decision "[i]f the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

### B. EXCLUSION OF PAST SEXUAL HISTORY AND JUVENILE ADJUDICATION

Johnson asserts that the trial court abused its discretion by excluding evidence that H.H. had sexually assaulted his sister and had been adjudicated for engaging in delinquent conduct. Evidence of a sexual-assault victim's past sexual behavior is not admissible unless it "relates to the motive or bias of the alleged victim" or "is constitutionally required to be admitted." Tex. R. Evid.

9

412(b)(2)(C), (E). Furthermore, such evidence must be more probative than prejudicial. Tex. R. Evid. 412(b)(3); *see also* Tex. R. Evid. 403. Similarly, evidence of a witness's juvenile adjudication is inadmissible "unless required to be admitted by the Constitution of the United States or Texas." Tex. R. Evid. 609(d).

Johnson posits several theories mandating admission of H.H.'s juvenile adjudication. First, he argues that the State left a false impression as to why H.H. was in counseling, which invited the admission of H.H.'s juvenile adjudication. But Johnson, not the State, initially introduced the topic of H.H.'s voluntary counseling in late 2007 during his cross-examination of Father. Father, in response to Johnson's questions on cross-examination, testified for the first time that H.H. was in counseling for depression, "[s]ome issues at school," and pornography. Johnson cannot introduce a topic into evidence—here, H.H.'s voluntary counseling in the fall of 2007—and then claim the State left a false impression with the jury regarding the nature of H.H.'s counseling. *See Shipman v. State*, 604 S.W.2d 182, 184–85 (Tex. Crim. App. [Panel Op.] 1980); *Blackwell v. State*, 193 S.W.3d 1, 10–15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Further, Johnson seems to assert that H.H.'s counseling in the fall of 2007 was court-ordered based on the juvenile adjudication while Father's and H.H.'s testimony about counseling implied that it was necessary "solely due to his relationship with his parents." But H.H.'s adjudication, which included court-ordered counseling, did not occur until July 18, 2008; thus, the 2007 counseling

could not have been court-ordered. Indeed, Johnson's counsel asserted during closing jury arguments that H.H.'s counseling in 2007 was "emotional[]" counseling.

Johnson's second theory of admissibility is that H.H.'s past sexual assaults of his sister would have shown his mental health at the time he reported Johnson's actions and at the time of his testimony. But the jury heard testimony that H.H. was in counseling at the time of the outcry, was depressed, had a habit of viewing pornography, had a strained relationship with his parents, had been caught shoplifting, was angry at Johnson for not giving him the Nintendo DS, and knew a report of sexual assault would get Johnson in trouble. Although Johnson was not allowed to introduce H.H.'s past sexual history with his sister and resultant juvenile adjudication in 2008,[1] the admitted evidence effectively indicated H.H.'s mental health at the time of the outcry and when he testified against Johnson. *See Irby v. State*, 327 S.W.3d 138, 145 & n.29 (Tex. Crim. App. 2010) ("The constitutional right to cross-examine concerning the witness's potential bias or prejudice does not include 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295 (1985))).

---

[1]H.H.'s juvenile record shows that H.H. stipulated to engaging in delinquent conduct when he sexually assaulted his sister on April 20, 2008, which was after H.H.'s outcry and Johnson's arrest.

Johnson's third theory is that the evidence was admissible to challenge H.H.'s assertion that he was relieved after he told the youth-group leader about the assault. During his direct testimony, H.H. testified that after he told the youth-group leader "everything," he "felt better, like a weight off [his] shoulders." In an offer of proof, H.H. stated that he felt "minute" guilt about his sister. But he then immediately testified that he "felt guilt" for abusing his sister. The connection between his relief after telling someone about Johnson and his guilt about his sister is tenuous at best. Johnson has failed to carry his burden to show that the trial court's ruling was outside the zone of reasonable disagreement based on this theory. *Cf. Chitwood v. State*, 350 S.W.3d 746, 748 (Tex. App.—Amarillo 2011, no pet.) (holding evidence of victim's past sexual history not admissible under rule 412(b) because appellant gave no explanation how evidence of victim's sexual activity with a third party showed motive to falsely accuse appellant of sexual assault).

Fourth, Johnson asserts that the evidence should have been admitted because it was necessary to show that H.H. made a false accusation to get attention from his parents and "get himself out of trouble in the eyes of his parents." However, the record shows that the jury had a glut of evidence by which it could be inferred that H.H. fabricated his accusation: H.H. knew such an accusation would get someone in trouble, he was mad at Johnson about the Nintendo DS, he had been caught shoplifting, he had a bad relationship with his parents, he was in counseling for his problems, and he had a pornography habit.

12

Indeed, defense counsel raised all of these grounds in his closing argument to the jury and urged that they indicated H.H. was not credible; thus, he was not prevented from presenting this defensive theory. This admissibility theory does not establish an abuse of discretion. *See Hammer v. State*, 296 S.W.3d 555, 562-63 (Tex. Crim. App. 2009) ("[T]he [Supreme] Court did not hold that a defendant has an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses. But the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory."); *cf. Arriola v. State*, 969 S.W.2d 42, 43 (Tex. App.—Beaumont 1998, pet. ref'd) (holding evidence of specific instances of victim's past sexual behavior inadmissible because appellant failed to establish a "nexus between that conduct and a motive for bringing false accusations").

Johnson's fifth theory is that the sexual-abuse evidence was necessary to show that H.H. "was not naïve about sexual behavior and knowledge of sexual matters" and to show his "knowledge that an individual can get in trouble for committing sexual acts on a juvenile." H.H. testified that he knew he "could make an accusation of sexual abuse and get somebody in trouble." Further, there was evidence that H.H. had viewed pornography before the incident with Johnson and that he had multiple problems at home, at school, and personally, which required voluntary counseling. The jury was not left with the false impression that H.H. did not know that a sexual-assault accusation could get someone in

13

trouble or that H.H. had no "knowledge about sexual matters" as posited by Johnson.

Although the constitutional right of confrontation includes the right of cross-examination to show bias or fabrication, the trial court retains wide latitude to impose reasonable limits on such cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). Here, Johnson has failed to show that the excluded evidence about H.H.'s past sexual behavior and subsequent juvenile adjudication fell outside this wide latitude and did not relate to any of the valid concerns recited in *Van Arsdall*. *See, e.g.*, *Irby*, 327 S.W.3d at 145–54 (discussing law regarding admission of victim's status as probationer and concluding evidence not admissible because appellant failed to show "logical connection" between the victim's testimony about his sexual encounters with appellant and his separate probationary status). Thus, we conclude the trial court did not abuse its discretion by excluding this evidence and overrule Johnson's first issue.[2]

---

[2]We need not address whether admission of the juvenile adjudication would have been more prejudicial than probative and, thus, inadmissible even though relevant. *See* Tex. R. Evid. 403. Such an analysis is necessary only if the evidence is found to be relevant and admissible, which we (like the trial court) have concluded the juvenile adjudication was not. *See, e.g.*, Tex. R. Evid. 403, 412(b)(3).

## C. ADMISSION OF EXTRANEOUS-OFFENSE EVIDENCE

Johnson argues that the trial court abused its discretion by admitting evidence of his 1980 conviction for the aggravated sodomy of G.M. at the guilt-innocence phase of trial. He asserts the evidence was inadmissible because it was mere propensity or conformity evidence, it had the "taint of fabrication," it was too prejudicial, and the State gave inadequate notice to Johnson of its intent to use the prior offense.

Generally, character evidence may not be used to prove circumstantially that a person acted in conformity with that character on a particular occasion. *See* Tex. R. Evid. 404(a). Such evidence may be admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b). A trial court does not abuse its discretion by admitting evidence under rule 404(b) if the evidence shows that (1) the extraneous transaction is relevant to a material, nonpropensity issue and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz*, 279 S.W.3d at 344; *Sandoval v. State*, 409 S.W.3d 259, 297–98 (Tex. App.—Austin 2013, no pet.); *Beasley v. State*, 838 S.W.2d 695, 701–02 (Tex. App.—Dallas 1992, pet. ref'd), *cert. denied*, 510 U.S. 969 (1993). Rule 404 excludes only that evidence that is offered solely for the purpose of proving bad character and conduct in conformity with that bad character. *De La Paz*, 279

15

S.W.3d at 343. One rationale allowing admission of character evidence is to rebut a defensive theory. *Id.*

Here, Johnson asserted in his opening argument to the jury that H.H. lied about Johnson. Johnson then questioned H.H. about a possible reason for the fabrication—H.H.'s anger over not getting a Nintendo DS from Johnson—and his desire to get Johnson in trouble, which H.H. knew a sexual-assault allegation would accomplish. The State called G.M. as its last witness in its case in chief to rebut Johnson's fabrication and retaliation theories, which the trial court recognized "c[a]me through loud and clear from the time of the voir dire of the Jury on up and through the examination of the last witness." Indeed, a defendant's opening statement supported by subsequently admitted evidence may open the door to the admission of extraneous-offense evidence to rebut defensive theories presented in that opening statement. *Bass v. State*, 270 S.W.3d 557, 563 & n.7 (Tex. Crim. App. 2008); *see also Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002); *Martin v. State*, Nos. 02-07-308–316-CR, 2008 WL 4831345, at *11 (Tex. App.—Fort Worth Nov. 6, 2008, pet. ref'd) (mem. op., not designated for publication). Johnson's actions with G.M. were substantially similar to his actions with H.H. In both instances, Johnson arranged to be alone with the thirteen-year-old male victims and promised gifts in exchange for fellatio. Indeed, Johnson recognizes that the offenses are similar.

Johnson argues that even if the defense of fabrication was sufficiently raised to justify admission of the extraneous-offense evidence in rebuttal and

even if the offenses were substantially similar, the 1980 conviction was not "free from any taint of fabrication." But contrary to Johnson's argument, the extraneous offense does not need to be completely free of a motive to fabricate the extraneous offense to be admissible. *See Dennis v. State*, 178 S.W.3d 172, 180 (Tex. App.—Houston [1st Dist.] 2005, pets. ref'd). What is required is that the extraneous offense be one for which the fabrication motive of the victim in the instant offense (not the victim of the extraneous offense) is absent. *See id.* No such fabrication motive by H.H. is present regarding the 1980 conviction.

Johnson next argues that admission of the prior conviction, even if relevant, was more prejudicial than probative, which renders the admission an abuse of the trial court's discretion. Under rule 403, the trial court considers several factors in determining admissibility: (1) how compellingly the extraneous offense serves to make a fact of consequence more or less probable, (2) the potential the evidence has to impress the jury in an irrational and indelible way, (3) the time the proponent will need to develop the evidence, and (4) the force of the proponent's need for the evidence to prove a fact of consequence and whether there is other probative evidence available to establish the fact at issue. *De La Paz*, 279 S.W.3d at 348–49. We presume that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

Here, Johnson clearly and repeatedly argued to the jury that H.H. fabricated the allegations against him, which rendered the extraneous-offense

necessary to rebut that defense. G.M.'s testimony lasted only fifteen minutes in the guilt-innocence phase of trial, which spanned a total three days. Although Johnson previously had been convicted of two other sexual offenses against children, which also would have rebutted Johnson's fabrication theory, the State sought to introduce only one of his prior convictions. Further, the trial court gave limiting instructions to the jury regarding the extraneous-offense evidence, which obviated any concern that the testimony would be given undue weight. We conclude that the trial court did not abuse its discretion by admitting the extraneous-offense evidence because the evidence was relevant apart from showing character—to rebut Johnson's fabrication and retaliation theories—and because the probative value of the extraneous-offense evidence was not substantially outweighed by its prejudicial effect. *See, e.g.*, *Newton v. State*, 301 S.W.3d 315, 317–22 (Tex. App.—Waco 2009, pet. ref'd); *Isenhower v. State*, 261 S.W.3d 168, 181–82 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Espinoza v. State*, No. 11-07-00382-CR, 2010 WL 227680, at *2–3 (Tex. App.— Eastland Jan. 21, 2010, no pet.) (mem. op., not designated for publication).

Johnson also argues that the State gave inadequate notice of its intent to offer evidence of the previous conviction. *See* Tex. R. Evid. 404(b). Specifically, Johnson asserts that the State's notice was not specific enough in that it gave only the crime, the year, and the state in which the conviction occurred. But the evidence was offered to rebut the defensive theory of fabrication and retaliation; thus, the advance-notice requirements are not applicable. *See Jaubert v. State*,

18

74 S.W.3d 1, 4 (Tex. Crim. App.), *cert. denied*, 537 U.S. 1005 (2002). Further, the record shows that the State notified Johnson multiple times well in advance of trial that it intended to introduce Johnson's prior convictions. These notices provided the cause number, the offense, the location, the conviction date, and G.M.'s contact information. This argument is not well founded.

Because the extraneous-offense evidence was offered to rebut Johnson's fabrication and retaliation theories and because it was not unduly prejudicial, the trial court did not abuse its discretion by admitting evidence regarding Johnson's 1980 conviction for aggravated sodomy. We overrule Johnson's second issue.

### III. DOUBLE JEOPARDY

In his final issue, Johnson argues that because the crime of indecency with a child by contact, as alleged in count three of the indictment, was subsumed into the crime of aggravated sexual assault of a child, as alleged in count one of the indictment, convictions of both offenses violate double-jeopardy protections. *See* U.S. Const. amend. V; Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g). The record shows that the sexual contact proved at trial occurred during and as part of the aggravated sexual assault alleged in count one. As the State concedes, to allow both convictions to stand would violate the constitutional prohibition against double jeopardy. Because the contact alleged in count three was subsumed into the aggravated sexual assault of a child alleged in count one, we sustain Johnson's third issue. *See Maldonado v. State*, 430 S.W.3d 460, 466–67 (Tex.

App.—San Antonio 2014, pet. granted). We reverse the trial court's judgment as to count three, set aside Johnson's conviction and punishment for indecency with a child by contact as alleged in count three, and enter a judgment of acquittal on count three. *See Bigon v. State*, 252 S.W.3d 360, 373 (Tex. Crim. App. 2008).

## IV. CONCLUSION

Because the trial court did not abuse its discretion by admitting evidence of Johnson's prior conviction for aggravated sodomy or by excluding evidence of H.H.'s previous sexual behavior and resultant juvenile adjudication, we overrule issues one and two and affirm Johnson's convictions for counts one and two. *See* Tex. R. App. P. 43.2(a). But because the conduct alleged in count three was subsumed into the conduct alleged in count one, we reverse the conviction for count three and enter a judgment of acquittal on that count. *See* Tex. R. App. P. 43.2(c), 43.3.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

EN BANC

DAUPHINOT, J., filed a dissenting opinion in which MCCOY and MEIER, JJ. join.

PUBLISH

DELIVERED: October 9, 2014

20