

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-13-00485-CR

JAMES D. OSBORNE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1340724R

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant James D. Osborne appeals his convictions for assault-bodily injury of a family member by impeding the breathing or circulation of the victim, with a previous conviction for family violence, and for injury to an elderly person. *See* Tex. Penal Code Ann. §§ 22.01(b)(2)(B), 22.04(a), (e) (West Supp. 2014).

---
[1]*See* Tex. R. App. P. 47.4.

In a single issue, Appellant argues that the trial court abused its discretion by admitting evidence of his 1999 conviction for assault. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Osborne lived with his eighty-five-year-old grandmother, Dora Beckwith. Ms. Beckwith testified that in late September 2012, Osborne hit her twice across the top of her head with a plunger handle while she was on the phone with her daughter. Ms. Beckwith testified that she had to get off the phone, put cold cloths on her head, and lie down due to the pain and nausea. Ms. Beckwith said that she had a bad headache for weeks and that there was bruising on her forehead. When asked if she was concerned for her safety after the incident, Ms. Beckwith said, "Well, in one way I was because I figured that if he wanted to behave like that, you know, you had to watch."

In early October 2012, Ms. Beckwith was in her son's bedroom watching television when Osborne came in around 11 p.m. and told her that he was going to kill her. Osborne then started beating her with his fists; he hit her on the head, shoulders, and chest. Ms. Beckwith said that Osborne had been drinking. At some point after that, Osborne left the room. Ms. Beckwith testified that she was concerned for her life. Osborne returned later and started beating Ms. Beckwith again. She grabbed his forefinger and thumb on his right hand, but he used the other hand to hit her in the chest and to choke her. Ms. Beckwith testified that she had trouble breathing and that she thought she was going to die. She said that Osborne also tried to stick his fingers up her nose and that she knew that

2

could kill her, so she grabbed his hand. She said that he bent her fingers all the way back as far as he could and that her hand still bothered her at the time of the trial.

Ms. Beckwith testified that she felt like she was a prisoner in her own home. She said that Osborne left and came back to the room over and over again until 5:00 a.m. Ms. Beckwith lay in bed until she heard Osborne snoring, and then she left and stood by the garage. Ms. Beckwith stayed there until shortly before 8:00 a.m., when her neighbor, Richard Gallardo, came outside to take his daughter to school, and Ms. Beckwith asked if he would help her. Ms. Beckwith stayed at the Gallardos' house throughout the day and overnight.

The next day, Ms. Beckwith told Gallardo that she could not stand the pain any longer, and he took her to the doctor. Ms. Beckwith did not have any broken bones but was "bruised really badly." She eventually spoke with the police, and they took photographs of her injuries, which were admitted into evidence.

Gallardo testified that when he first made contact with Ms. Beckwith on the morning of October 9, 2012, she approached him while wearing a long robe. He said that she was terrified and shaking, and she grabbed his arms. Gallardo testified that he was very scared when he saw her due to "her demeanor and her grabbing [his] arms and the urgency of pleading for help." Ms. Beckwith told him that Osborne had been drinking and had hurt her. Gallardo rushed her inside his house and locked the door. Gallardo respected Ms. Beckwith's wishes not to call the police. Gallardo observed that Ms. Beckwith was in pain and testified that he

3

saw "some pretty bad bruising" on both of her wrists and her neck area. The following day, he took Ms. Beckwith to an urgent care facility. The police ultimately came and took statements from Ms. Beckwith and Gallardo.

Osborne took the stand in his defense and admitted that he had pushed his grandmother and had caused the bruising on her, but he denied that he had intended to injure or to harm her. Osborne also admitted to prior criminal acts, including a 2001 conviction for assault causing bodily injury to a family member with a prior conviction, a 2007 drug conviction from Missouri, and a 2010 domestic assault conviction from Missouri. On cross-examination, Osborne admitted that he had previously assaulted his grandmother in 1999, that he had pleaded guilty to assault, and that he had served forty-five days in jail.

After hearing the evidence, the jury found Osborne guilty of assault-bodily injury alleged by impeding the breathing or circulation of the victim, with one prior conviction, and assessed his punishment at sixty years' confinement and a $10,000 fine. The jury also found Osborne guilty of injury to an elderly person and assessed his punishment at twenty years' confinement and a $10,000 fine.[2] The trial court sentenced Osborne in accordance with the jury's recommendations, and he perfected this appeal.

---

[2]The jury found Osborne not guilty of aggravated kidnapping and assault–bodily injury within a twelve-month period of a previous assault of bodily injury of a family member. The State had also indicted Osborne for aggravated assault with a deadly weapon; the jury found Osborne guilty of the lesser-included offense of assault, but the State did not proceed to punishment on this offense.

4

### III. ADMISSIBILITY OF PRIOR CONVICTION

After Osborne testified on direct examination that he had not intended to harm his grandmother, the State approached the bench at the start of its cross-examination and requested permission to question him about his 1999 misdemeanor assault conviction:

> [PROSECUTOR]: He has a prior misdemeanor assault against Dora that occurred in 1999. I believe, based upon his testimony, that we should be able to ask him about that. It goes to intent and also whether he intentionally or knowingly assaulted her on this occasion.

> THE COURT: Your response?

> [DEFENSE COUNSEL]: My response is that there's too great a danger under 403 that the prejudicial effect would greatly outweigh any probative value, that it is outside the temporal proximity for impeachment purposes and that there is too great a danger that the jury would believe that he acted in conformity with that conduct.

> THE COURT: Anything else you'd like to add?

> [PROSECUTOR]: I would argue that's exactly what the exceptions provide. It's to show that he acted in conformity with that prior act.

> THE COURT: All right. I've conducted the balancing test. The balancing is that the probative value substantially outweighs the prejudicial effect.

> And further, that based upon the claim that he did not intentionally cause harm but it was a reckless act and that this previous conviction was in the form of a plea bargain --

> [PROSECUTOR]: Yes, sir.

> THE COURT: -- and that he pled guilty to the knowing and intentional act involving the same victim and that because of her elderly status, he was saying that the bruising was not something he

intended and being a[n] issue for the jury as a fact[finder] that the evidence would aid in their conclusion, and it is admissible and subject for cross-examination as a result. So . . . [.]

[DEFENSE COUNSEL]: Running objection?

THE COURT: Granted.

In his sole issue, Osborne argues that the trial court abused its discretion by admitting evidence of his 1999 conviction for assault because its prejudicial effect outweighed its probative value. Osborne contends that the trial court admitted the 1999 conviction for impeachment purposes but that the conviction does not meet the requisites of rule 609. The State maintains that the 1999 conviction was not admitted pursuant to rule 609 but was admitted under rule 404(b) to rebut Osborne's testimony that he lacked intent to harm his grandmother. Because the trial court's ruling, as set forth above, encompassed admission of the prior conviction under rule 404(b), we will proceed with a rule 404(b) analysis. *See Owen v. State*, No. 02-03-00164-CR, 2004 WL 966323, at *3 (Tex. App.—Fort Worth May 6, 2004, no pet.) (mem. op., not designated for publication).

## A. Standard of Review

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). A trial court does not abuse its discretion as long as the decision to admit the evidence is within the zone of reasonable disagreement.

6

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

### B. Relevancy of the Evidence

Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character. Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). But extraneous offense evidence is admissible under both rules 403 and 404(b) if that evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and the probative value of the evidence is not substantially outweighed by unfair prejudice. *See* Tex. R. Evid. 403, 404(b); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Extraneous offense evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Tex. R. Evid. 404(b); *Devoe*, 354 S.W.3d at 469.

Intent can be characterized as a contested issue for purposes of justifying the admission of extraneous offense evidence to help prove intent if the required intent for the primary offense cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed. *Ludwig v. State*, 969 S.W.2d 22, 30 (Tex. App.—Fort Worth 1998, pet. ref'd). Once the defendant claims lack of intent, intent can no longer be inferred from other uncontested direct evidence, and the State is allowed to prove intent

7

through evidence of other crimes, wrongs, or acts or to show violent acts where the defendant was the aggressor. *Id.* Moreover, the extraneous offense is relevant if its presence makes appellant's criminal intent more likely than would be assumed in its absence. *See Prieto v. State*, 879 S.W.2d 295, 298 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

Here, Osborne's sole defensive theory was that he lacked intent with respect to the result of his conduct when he pushed his grandmother. By placing his intent into issue, Osborne opened the door to evidence of other bad acts that established his intent and rebutted his defensive theory. *See Bradshaw v. State*, 65 S.W.3d 232, 236 (Tex. App.—Waco 2001, no pet.) ("When a defendant claims his act was free from criminal intent, extraneous offenses are relevant to prove guilty intent."); *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (holding that State may use extraneous offense to rebut defensive theory). We hold that the trial court did not abuse its discretion by determining that the complained-of evidence was relevant to show Osborne's intent and to rebut a defensive theory.

## C. Probative Value of Evidence Not Substantially Outweighed by Its Prejudicial Effect

Having found that the complained-of evidence was relevant under rule 404(b), we will now address whether it nonetheless should be excluded under

rule 403.[3]  *See* Tex. R. Evid. 403.  That rule provides that even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."  *Id.*  "Whether extraneous offense evidence has relevance apart from character conformity . . . is a question for the trial court."  *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rule 403 favors the admission of relevant evidence, and it is presumed that relevant evidence will be more probative than prejudicial.  *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006).  A proper rule 403 analysis includes, but is not limited to, the following factors:  (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for the evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to

---

[3]Although Osborne argues that the *Theus* factors should be utilized in performing the balancing test, his argument is premised on the relevancy of the evidence under rule 609.  *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992) (setting forth five factors to consider when weighing the probative value of a prior conviction against its prejudicial effect).  Because we have held that the evidence is relevant under rule 404(b), we perform the balancing test required by rule 403.  *See Thomas v. State*, No. 01-12-00279-CR, 2013 WL 6405479, at *7 (Tex. App.—Houston [1st Dist.] Dec. 5, 2013, no pet.) (mem. op., not designated for publication) (performing a balancing test under rule 403 when evidence could not have been properly admitted under rule 609 and when State defended admissibility of evidence under rule 404(b)).

9

evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Here, evidence that Osborne had previously been convicted of assaulting his grandmother was no doubt relevant and probative of the charged offenses. Because Osborne repeatedly denied any intent to harm his grandmother, the State's need for the evidence was high. The evidence of Osborne's 1999 misdemeanor assault conviction, however, was not likely to suggest that the jury decide the case on an improper basis because Osborne admitted to two other convictions involving bodily assault of a family member and domestic assault, and, in any event, the trial court's charge to the jury included the following instruction to prevent the jury from giving the prior conviction undue weight:

> You are instructed that if there is any testimony before you in this case regarding the Defendant having committed bad acts other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other bad acts, if any were committed, and even then you may only consider the same in determining the intent or knowledge of the Defendant if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

Moreover, the testimony on the 1999 misdemeanor assault conviction was very brief, spanning only three pages of the record. Applying the rule 403 balancing factors, we hold that the trial court did not abuse its discretion by determining that

10

the probative value of the complained-of evidence was not substantially outweighed by its prejudicial effect. *See id.*; *Johnson v. State*, 449 S.W.3d 240, 249 (Tex. App.—Fort Worth Oct. 9, 2014, pet. filed) (op. on en banc reconsideration) (holding that probative value of prior conviction was not substantially outweighed by its prejudicial effect because it was relevant apart from showing character to rebut defensive theories).

We overrule Osborne's sole issue.

### IV. CONCLUSION

Having overruled Osborne's sole issue, we affirm the trial court's judgment.


/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 26, 2015