FILED IN
COURT OF CRIMINAL APPEALS

June 19, 2015

ABEL ACOSTA, CLERK

PD-1496-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/19/2015 11:19:10 AM
Accepted 6/19/2015 12:54:32 PM
ABEL ACOSTA
CLERK

**Cause No. PD-1496-14**

In the Court of Criminal
Appeals of Texas

---

**Joe Dale Johnson**,
Appellant

v.

**The State of Texas**,
Appellee

On Review from Cause No. 02-11-00253-CR
in the Second Court of Appeals
Fort Worth, Texas

---

**State's Brief on the Merits**

---

**Maureen Shelton**
Wichita County Criminal District Attorney

**John Gillespie**
First Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 02907800
John.Gillespie@co.wichita.tx.us

**Carey Jensen**
Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 24083252
Carey.Jensen@co.wichita.tx.us

900 Seventh Street
Wichita Falls, Texas 76301
(940) 766-8113 phone
(940) 716-8530 fax

**Attorneys for State of Texas**

**Oral Argument Waived**

**To the Court of Criminal Appeals:**

Pursuant to Rule 70.2 of the Rules of Appellate Procedure, the State submits its reply to Appellant's brief on the merits. The State asks this Court to deny Appellant's points and affirm the en banc judgment of the Second Court of Appeals.

## Identity of Parties and Counsel

**Joe Dale Johnson**, Appellant
TDCJ # 01723241
Estelle Unit
264 FM 3478
Huntsville, TX 77320-3320

**Jeff Eaves**
Counsel for Joe Dale Johnson on trial and appeal
900 8th Street, Suite 1400
Wichita Falls, Texas 76301

**Todd Greenwood**
Counsel for Joe Dale Johnson on appeal
813 8th St. Ste. 550-K
Wichita Falls, Texas 76301

**John Gillespie**
First Assistant Criminal District Attorney
Wichita County
Attorney for the State at trial and appeal
900 Seventh Street
Wichita Falls, Texas 76301

**Carey Jensen**
Assistant Criminal District Attorney
Wichita County
Attorney for the State on appeal
900 Seventh Street
Wichita Falls, Texas 76301

# Table of Contents

Identify of Parties and Counsel ...................................................................iii

Table of Contents ................................................................................. iv

Index of Authorities ..............................................................................vii

Statement Regarding Oral Argument ........................................................ ix

Statement of the Case ........................................................................... ix

Issues Presented ................................................................................ xi

Statement of Facts............................................................................... 1

Summary of the Argument ...................................................................... 4

Argument ........................................................................................ 10

Reply Issue #1: **Appellant failed to inform the trial judge of his open-door/false-impression theories for admission of the juvenile misconduct. Thus, Appellant has waived those grounds for admission** ............................................................. 10

A. Appellant never informed the trial judge of any theory that the prosecutor opened-the-door to the juvenile misconduct in jury selection ............................................... 11

B. Appellant never informed the trial judge of any theory that the prosecutor opened-the-door to the juvenile misconduct in opening statement ...................................... 12

C. Appellant never informed the trial judge of any theory that the prosecutor presented a "false impression" about the juvenile as a basis for admitting the juvenile misconduct................................................................... 13

Reply Issue #2: **Contrary to Appellant's claims, the record reveals he was able to meaningfully develop and argue a fabrication defense** ................................................................. 14

Reply Issue #3: **Appellant has failed to show a logical nexus between the juvenile offense and Appellant's fabrication defense. Without a logical nexus, the victim's juvenile offense was inadmissible** ................................................ 16

    A. Appellant fails to establish a logical nexus between the juvenile offense and the fabrication defense ...................... 16

        1. Motive: Nothing in the record showed how H.H.'s abuse of his sister was connected to Appellant or supplied a motive or animus for H.H. to lodge a false claim against Appellant .................... 17

        2. Means: The jury heard H.H. admit that he knew making an accusation of sexual abuse could get someone in trouble. The juvenile offense provided no additional "means" to make a false accusation ................................................................. 18

        3. Knowledge: The jury heard about H.H.'s sexual knowledge from pornography. A girl/boy sexual relationship would provide little additional information on how to a make a male-on-male claim of sexual abuse ................................................ 19

        4. Opportunity: The victim's abuse of his sister was not connected in any way to him being alone with Appellant. ................................................................. 20

    B. The juvenile offense was properly excluded as irrelevant, as improper impeachment with specific instances of conduct, as the sexual history of the victim, and under the public policy of protecting the privacy of juvenile offenses ................................................ 22

Reply Issue #4: **The record reveals that no false impression about the victim was left with the jury** ...........................25

      A. The prosecutor's questions in voir dire were appropriate, general questions that related to the intelligent use of peremptory strikes ...................................25

      B. The prosecutor's statements in opening about Appellant and the victim were accurate and in line with what the evidence showed at trial .....................................29

         1. The prosecutor's statements in opening regarding H.H. were true and borne out by the evidence at trial.............................................................30

         2. The prosecutor's statements about Appellant were true and borne out by the evidence at trial........31

      C. No contradiction existed between H.H. feeling more strongly a wrong done to him than one he did to someone else. Rather, this is simple human nature ..........35

Reply Issue #5: **As the juvenile probation was discharged in July 2010, the State had no ongoing influence over the witness; thus, the concerns of the *Irby* dissent relating to influence from a probation relationship are not implicated here. Appellant has candidly conceded this point**.....................36

Prayer .................................................................................................38

Certificate of Compliance....................................................................40

Certificate of Service..........................................................................40

# Index of Authorities

**Cases**                                                                              **Page**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984) ...................... 20

*Barajas v. State*, 93 S.W.3d 36 (Tex. Crim. App. 2002) ........................... 26

*Davis v. Alaska,* 415 U.S. 308 (1974) ..................................................... 22

*Irby v. State*, 327 S.W.3d 138 (Tex. Crim. App. 2010). ............ 22-23, 36-38

*Johnson v. State (Johnson I),* No. 02-11-00253-CR, 2013 WL 531079 (Tex. App.—Fort Worth Feb. 14, 2013) (mem. op., not designated for publication) ...................................................... ix, x, 12

*Johnson v. State (Johnson II)*, 449 S.W.3d 240 (Tex. App.—Fort Worth 2014, pet. granted) (mem. op., en banc) ................. ix, x, 12, 15

*Lee v. State*, 206 S.W. 3d 620 (Tex. Crim. App. 2006). ........................... 29

*McDonald v. State*, 186 S.W.3d 86 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ................................................................................ 26

*Messenger v. State*, 638 S.W.2d 883 (Tex. Crim. App. 1982) .................. 20

*Reyna v. State*, 168 S.W.3d 173 (Tex. Crim. App. 2005) .................... 11-14

*U.S. v. Doe*, 903 F.2d 16 (D.C. Cir. 1990) ............................................... 29

*Wingo v. State*, 189 S.W.3d 270 (Tex. Crim. App. 2006). ........................ 26

**Statutes**

Tex. Pen. Code 22.021(e) ........................................................................ 34

**Rules**

Tex. R. App. P. 33.1(a) ............................................................................. 14

Tex. R. App. P. 33.1(a)(1)(A) ...................................................................... 10

Tex. R. App. P. 68.4(f)(g) ........................................................................... 33

Tex. R. Evid. 402 ....................................................................................... 24

Tex. R. Evid. 412(b)(2)(C) & (E) ............................................................... 24

Tex. R. Evid. 608(b) ............................................................................. 24-25

Tex. R. Evid. 609(d) ............................................................................. 24-25

## Statement Regarding Oral Argument

Because this Court has already addressed when the Confrontation Clause permits cross-examination about a juvenile offense and adjudication in *Irby v. State*, the State believes oral argument is unnecessary and therefore waives it.

## Statement of the Case

The initial memorandum opinion issued by the Second Court of Appeals on February 14, 2013 reversing and remanding the Aggravated Sexual Assault counts was fraught with factual inaccuracies and misstatements that did not comport with the trial record.[1]

This memorandum opinion incorrectly claimed that the State had left a false impression with the jury by inquiring into the victim's counseling and asserted that the State left a false impression that the victim was innocent in sexual matters.[2]

Neither of these assertions was supported by the trial record. Rather, the record revealed that it was defense counsel, not the prosecutor, who first

---

[1]   *See State's Motion for En Banc Reconsideration*, *Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth Feb. 22, 2013).

[2]   *Johnson v. State*, No. 02-11-00253-CR, 2013 WL 531079 (Tex. App.—Fort Worth Feb. 14, 2013) (mem. op., not designated for publication) ("*Johnson I*"), *opinion withdrawn and superseded by Johnson v. State*, 449 S.W.3d 240 (Tex. App.—Fort Worth 2014, pet. granted) (mem. op., en banc) ("*Johnson II*").

inquired into counseling.[3]   Additionally, Appellant inquired at trial into the

victim's issues with pornography without objection by the State.[4]

Based upon this erroneous open-door theory, the memorandum

opinion concluded that the State had opened the door to the victim's juvenile

adjudication.[5]

Because the memorandum opinion was founded on a false premise

not supported in the trial record, the State filed a motion for en banc

reconsideration.[6]

On October 9, 2014, the court of appeals granted the State's motion

and withdrew its initial memorandum opinion.[7]   Citing the trial record, the en

banc decision rejected the false open-door premise, explaining that the

defense – not the State – inquired into counseling and, therefore, the defense

could not open its own door.[8]   The en banc decision also found that the jury

was not left with a false-impression that H.H. was naïve in sexual matters.[9]

---

[3]      R.R. 7:63.
[4]      R.R. 7:64-65,149.
[5]      *Johnson I* at *6.
[6]      *State's Motion for En Banc Reconsideration*, *Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth Feb. 22, 2013).
[7]      *Johnson II* at 241.
[8]      *Id*. at 246.
[9]      *Id*. at 246.

## Issues Presented

I.     Appellant failed to inform the trial judge of his open-door/false-impression theories for admission of the juvenile misconduct. Thus, Appellant has waived those grounds for admission.

II.    Contrary to Appellant's claims, the record reveals he was able to meaningfully develop and argue a fabrication defense.

III.   Appellant has failed to show a logical nexus between the juvenile offense and Appellant's fabrication defense. Without a logical nexus, the victim's juvenile offense was inadmissible.

IV.    The record reveals that no false impression about the victim was left with the jury.

V.     As the juvenile probation was discharged in July 2010, the State had no ongoing influence over the witness; thus, the concerns of the *Irby* dissent relating to influence from a probation relationship are not implicated here. Appellant has candidly conceded this point.

**Statement of Facts**

Appellant, previously convicted of raping a boy in Kansas,[10] began volunteering with his church youth group in Burkburnett, Texas, serving as a chaperon for youth trips to places such as Six Flags.[11] Appellant asked H.H., who was 12-years-old, to mow his lawn.[12] Then, Appellant and H.H. began to spend more time together.[13] Appellant would take H.H. to movies, out to eat, and to hockey games.[14] Appellant also gave H.H. small gifts like a $20 bill on Sunday mornings at church, a pack of gum, or Pokemon cards.[15] Based on all these overtures, Appellant became to H.H. like "an uncle figure" who was "more like family."[16] Appellant asked H.H. to "trust him more" accelerating the intimacy and secrecy of the relationship.[17]

All of this attention culminated with Appellant sexually propositioning H.H.[18] When they were alone together, Appellant reached over and started touching H.H.'s stomach, and then asked H.H. to show him his penis.[19] H.H.

---

[10]  *See* R.R. 10:23; SX-9.
[11]  R.R. 7:26.
[12]  R.R. 7:29.
[13]  R.R. 7:29.
[14]  R.R. 7:29-32,78.
[15]  R.R. 7:85.
[16]  R.R. 7:79.
[17]  R.R. 7:79.
[18]  R.R. 7:84.
[19]  R.R. 7:84.

1

said no the first time, but eventually acquiesced.[20] Appellant then showed H.H. pornography.[21]

Appellant asked H.H. if he could suck his penis.[22] When H.H. said he didn't want to, Appellant suggested that he suck H.H.'s penis for 5 seconds and "if you don't like it, I'll stop."[23] H.H. then unzipped his pants and Appellant fellated him.[24] Appellant then asked H.H. to suck on his penis, but H.H. said no.[25] Appellant again suggested that H.H. try it for 5-seconds, and H.H. acquiesced.[26] Then, they went and mowed the yard together.[27] H.H.'s father grew uneasy about Appellant's relationship with his son and the amount of time they wanted to spend together and put an end to it.[28]

Eventually, H.H. told Jimmy, the teen group leader at church, about these sexual acts with Appellant.[29] Jimmy then went to speak to H.H.'s father, and as a result, H.H.'s father reported the sexual abuse to the Burkburnett Police Department.[30]

---

[20] R.R. 7:85.
[21] R.R. 7:86.
[22] R.R. 7:86.
[23] R.R. 7:88.
[24] R.R. 7:89.
[25] R.R. 7:90.
[26] R.R. 7:90.
[27] R.R. 7:91.
[28] R.R. 7:29-30.
[29] R.R. 7:109,114-15.
[30] R.R. 7:33-34. Jimmy, the outcry witness was stationed in Italy with the Army at the time of trial and had been in Italy for about three years. (R.R. 7:35.).

2

H.H.'s outcry to Jimmy about Appellant's sexual abuse occurred in November 2007.[31] In May 2008, six months later, H.H. was charged with sexual abuse of his sister that had been occurring for several years.[32] In July 2008, H.H. was adjudicated for the juvenile offense and ordered into court-ordered counseling as part of the probation.[33] H.H. discharged his juvenile probation in 2010, so at the time of the trial H.H. was no longer on juvenile probation.[34]

At trial, Appellant advanced a fabrication theory—that H.H. had accused him of sexual abuse because H.H. was angry that Appellant had donated a Nintendo DS to the church that he had promised to give to H.H.[35] To rebut the defensive theory of fabrication, the State called a previous victim of Appellant.[36] Now a grown man, that previous victim testified that Appellant had used a similar method of attention and promises to sexually proposition and rape him when he was 13.[37] Specifically, Appellant groomed that boy by taking him swimming.[38] Then, in exchange for the promise of a dirt bike,

---

[31]    R.R. 8:16.
[32]    *See Defense Exhibit 1*, the May 12, 2008 *Original Petition*, and the July 18, 2008 *Order of Probation*; R.R. 7:160.
[33]    *See Defense Exhibit 1*, the May 12, 2008 *Original Petition*, and the July 18, 2008 *Order of Probation*.
[34]    R.R. 4:5.
[35]    R.R. 7:20,145,147.
[36]    R.R. 9:15.
[37]    R.R. 9:19-26.
[38]    R.R. 9:19-21.

3

Appellant had the boy fellate him.[39] During punishment, the State proved up Appellant's Kansas felony convictions for two counts of Aggravated Sodomy and one count of Indecent Liberties with a Child.[40] The jury found the sexual enhancement true, and Appellant was sentenced to mandatory Life sentences.[41]

## Summary of the Argument

First, Appellant failed to inform the trial judge of his open-door/false impression theories for admission of the juvenile conduct. To preserve error when evidence is excluded, a party must in a timely manner inform the trial judge of each basis for admission. This offers the trial judge an opportunity to consider that reason for admission. If a party fails to notify the trial court of a basis for admission, then he waives his ability to complain on those grounds about the excluded evidence on appeal.

At the admissibility hearing during trial concerning the juvenile offense and adjudication, Appellant never raised any open-door/false impression theories as a basis for admission. Appellant never mentioned the prosecutor's voir dire or opening statement as having opened any door. By not articulating these open-door/false impression theories of admissibility to

---

[39] R.R. 9:24.
[40] See SX-6,7,8; R.R. 10:18-23.
[41] C.R. 153, 155, 157; 169-177.

the trial judge, Appellant is barred from raising them for the first time on appeal.

Second, contrary to Appellant's claims, the record reveals he was able to meaningfully develop and argue a fabrication defense. Starting in opening statement, Appellant told the jury H.H. was not your regular, normal 13-year-old boy, that he was calculating and driven by anger concerning Appellant giving a Nintendo DS to the church, and that this motivated H.H. to make up this story. During cross-examination of H.H., Appellant confronted H.H. over his anger at Appellant over the Nintendo, and also established that H.H. was aware that he could retaliate against Appellant by making up a false claim of abuse. In closing, Appellant highlighted this fabrication theory. So, the record contradicts Appellant's claims and reveals he did develop and argue a fabrication/retaliation defense.

Third, Appellant has failed to show any logical nexus between the juvenile offense and Appellant's fabrication defense. While Appellant contended that the juvenile offense somehow provided H.H. with motive, means, knowledge, and opportunity to make a false claim, the record demonstrates the juvenile offense had no evidentiary bearing upon motive, means, knowledge or opportunity.

For motive, nothing in the record showed how H.H.'s abuse of his sister was connected to Appellant or supplied a motive or animus for H.H. to lodge a false claim against Appellant. There was no evidence that Appellant had discovered H.H.'s abuse of his sister or that Appellant had threated to expose H.H.'s abuse. In fact, the record showed no connection or overlap between H.H.'s juvenile misconduct and his relationship with Appellant.

For means, the jury heard that H.H. knew that making an accusation of sexual abuse could get someone in trouble. So, the jury understood that H.H. had the means to make a false claim. The record fails to show how H.H.'s abuse of his sister provided any additional elucidation of H.H.'s means for making a false claim against Appellant, since H.H. freely admitted on the stand in front of the jury that he understood the power of a false claim of sexual abuse.

For knowledge, the jury heard about H.H.'s access to and history with internet pornography. So, the jury was aware that H.H. had an independent source for sexual information apart from Appellant's sexual abuse of him. A girl/boy incestuous relationship would provide little additional information on how to make a realistic male-on-male false claim of sexual abuse, as the incestuous girl/boy relationship bears little in common with male-on-male adult/juvenile sexual acts and interaction. Additionally, internet

6

pornography—which the jury heard H.H. had a history of accessing—would provide a far more fertile source of information for a juvenile trying to figure out how to make a realistic male-on-male claim of man/boy sexual abuse. Thus, H.H.'s juvenile misconduct offered little evidentiary value on the issue of knowledge to make a male-on-male, man/boy claim.

For opportunity, H.H.'s abuse of his sister was not connected, in any way, to him being alone with Appellant. Opportunity simply means that the alleged doer of an act was present at the time and place of the act. The time Appellant and H.H. spent alone together was what provided H.H. with the opportunity to make a false claim about what happened during that time together. If Appellant and H.H. had never spent any time alone together, then H.H. would not have had the opportunity to lodge a false claim of sexual abuse. Nothing in the record revealed that H.H.'s abuse of his sister had anything to do with the time he spent alone with Appellant. The jury heard from multiple witnesses that H.H. and Appellant had spent time alone together. Thus, the jury was aware that H.H. had the opportunity to make a false claim as to what happened when he was alone with Appellant. H.H.'s juvenile misconduct had no linkage to the issue of opportunity to make a false claim.

As Appellant could not demonstrate a logical nexus between H.H.'s juvenile misconduct and Appellant's sexual abuse of H.H., the trial court properly excluded the juvenile offense as irrelevant, as improper impeachment with specific instances of conduct, as the sexual history of the victim, and under the public policy of protecting the privacy of juvenile offenders. Rather, Appellant essentially wanted to argue "H.H. is a juvenile pervert so you shouldn't believe him." This is the epitome of an improper general impeachment attack.

Fourth, the record reveals that no false impression about the victim was left with the jury. As to voir dire, the prosecutor's questions were general inquiries into the broad topic of child sexual abuse. These questions were certainly appropriate to aid in the intelligent use of peremptory strikes. Appellant never objected to any of these questions. And, none of the prosecutor's questions were fact-specific to this case.

As to the prosecutor's statements in opening, the record revealed that these statements were accurate and borne out by what the evidence showed at trial. Relating to H.H., the prosecutor asked the jury to look at this through the lens of 12-year-old boy. The testimony at trial revealed that H.H. was 12 at the time of the offense, even though he was 17 at the time of trial. Additionally, "younger than 14" was an element of the offense and did not

create any false impression about H.H. when he referenced his age at the time of the offense, as that was an element of the offense.

Relating to Appellant, the prosecutor's statements were also accurate and borne out by the evidence. In opening, the prosecutor said the evidence would show Appellant was cunning, opportunistic, and deceitful. At trial, the testimony revealed that Appellant volunteered in his church youth group, showered H.H. with attention and gifts, and maneuvered to create a relationship of trust and time alone with H.H. all with the goal of sexually abusing H.H. So, the evidence revealed Appellant to be cunning, opportunistic, and deceitful in his modus operandi.

Appellant also complains that the prosecutor asked the jury, in opening, to consider whether the relationship between Appellant and H.H. was a normal mentor/mentee relationship or whether it was a deviant, perverted relationship. Texas law defines a sexual relationship between a boy and a man as a deviant, perverted relationship in that it is a first degree felony that carries up to Life in prison. Thus, the prosecutor did not create a false impression about Appellant in opening by asking the jury to consider the nature of the relationship between H.H. and Appellant.

Fifth, as the juvenile probation was discharged in July 2010, the State had no ongoing influence over H.H. at the time of trial in 2011. So, the

9

concerns of the *Irby* dissent related to the ongoing influence of a probation relationship are not implicated here. Appellant has candidly conceded this point.

## Argument

**I.  Appellant failed to inform the trial judge of his open-door/false-impression theories for admission of the juvenile misconduct. Thus, Appellant has waived those grounds for admission.**

While Appellant's brief advances multiple open-door/false-impression theories for the admissibility of H.H.'s juvenile misconduct,[42] Appellant is barred from raising these theories as he failed to notify the trial judge of these reasons for admission.[43]  Further, before the Second Court, Appellant actively eschewed any open-door theory:  "This appeal is not about who opened a door…"[44]  Now, Appellant has reversed course, claiming that the prosecutor "independently 'opened any doors' that could have possibly been opened."[45]

To preserve a complaint that evidence was improperly excluded, a party must state "the grounds for the ruling that the complaining party sought with sufficient specificity to make the trial court aware of the complaint."[46]

---

[42]     *See Petitioner's Discretionary Review Brief* at 21-23.
[43]     R.R. 7:163-66.
[44]     *See Appellant's Response to State's Motion for En Banc Reconsideration*, *Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth May 12, 2014), at 22.
[45]     *See Appellant's Brief* at 23.
[46]     Tex. R. App. P. 33.1(a)(1)(A).

10

When a party seeking admission of evidence fails to clearly articulate the grounds for admission, the trial judge is not put on notice and is not able to consider and rule based upon that rationale.[47] Requesting admission of evidence for one legal basis does not preserve for review a different legal basis not mentioned.[48] Thus, the unmentioned grounds for admission are not preserved for review, and a party cannot raise them for the first time on appeal.[49]

## A. Appellant never informed the trial judge of any theory that the prosecutor opened-the-door to the juvenile misconduct in jury selection.

Although Appellant now attempts to argue that the prosecutor somehow opened the door to the juvenile misconduct based upon questions in jury selection,[50] the record reveals Appellant never informed the trial judge of this theory of admission for the juvenile misconduct.[51] Appellant never once mentioned or referenced any of the prosecutor's questions in jury selection at the hearing on admissibility of the juvenile misconduct.[52] As

---

[47] *See Reyna v. State*, 168 S.W.3d 173, 180 (Tex. Crim. App. 2005).
[48] *See id.*
[49] *See id.*
[50] *See Petitioner's Discretionary Review Brief* at 22.
[51] R.R. 7:163-67.
[52] R.R. 7:163-67.

11

such, this theory of admission was not presented to the trial judge, and Appellant cannot raise it for the first time on appeal.[53]

## B. Appellant never informed the trial judge of any theory that the prosecutor opened-the-door to the juvenile misconduct in opening statement.

Even though Appellant now claims that the prosecutor's opening statement opened-the-door to the juvenile misconduct, the record also reveals that Appellant never informed the trial judge of this theory at the hearing on admissibility of the juvenile misconduct.[54] In fact, Appellant never once referenced the prosecutor's opening statement at the admissibility

---

[53]    *See Reyna*, 168 S.W.3d at 179-80. Also, Appellant's brief to the Second Court contained no reference or argument that these general voir dire questions opened the door. *See Appellant's Brief to the Second Court*. And, the memorandum opinion authored by Justice Dauphinot contained no reference to these general voir dire questions opening the door to the juvenile offenses. *See Johnson I*. Rather, the memorandum opinion argued that the State left a false impression during the testimony as to why the juvenile was in counseling. *Id*.

The State filed a motion for en banc reconsideration, detailing how the memorandum opinion failed to note that the defense, not the State, first asked about the juvenile's counseling, that the defense could not open its own door, and that the memorandum opinion conflated the family counseling that the juvenile was in before his outcry with the court-ordered counseling he was later ordered to attend. *See State's Motion for En Banc Reconsideration, Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth Feb. 22, 2013).

In response to the State correcting the factual misstatements of the memorandum opinion and prevailing on its motion for en banc reconsideration, Justice Dauhpinot's dissent then advanced the idea, for the first time, that these general voir dire questions opened the door to the juvenile offense. *See Johnson II*, 449 S.W.3d at 251. Appellant has now adopted Justice Dauphinot's theory. *See Petitioner's Discretionary Review Brief* at 22.

[54]    R.R. 7:163-67.

12

hearing.[55] As such, this theory of admission was not presented to the trial judge, and Appellant cannot raise it for the first time on appeal.[56]

## C. Appellant never informed the trial judge of any theory that the prosecutor presented a "false impression" about the juvenile as a basis for admitting the juvenile misconduct.

In addition to his theories relating to voir dire and opening, Appellant now also advances a general theory that the prosecutor opened-the-door by somehow presenting a "false impression" through H.H.'s testimony.[57] The record also reveals that Appellant never presented this "false impression" theory to the trial judge.[58] At the admissibility hearing, Appellant never informed the judge that he believed the prosecution had left a false impression to the jury through H.H.'s testimony, or even used the phrase "false impression."[59] As such, this theory of admission was not presented to the trial judge, and Appellant cannot raise it for the first time on appeal.[60]

At the admissibility hearing, Appellant notified the trial judge that he believed the juvenile misconduct was admissible to show the emotional and mental state of H.H. at the time of the outcry, to show the credibility of the witness, to show motive to gain attention, and under 404(b) to show

---

[55]   R.R. 7:163-67.
[56]   *See Reyna*, 168 S.W.3d at 179-80.
[57]   *See Petitioner's Discretionary Review Brief* at 21-22.
[58]   R.R. 7:163-67.
[59]   R.R. 7:163-67.
[60]   *See Reyna*, 168 S.W.3d at 179-80.

13

knowledge.[61] These were the only reasons for admission that Appellant asked the trial judge to consider, and no other grounds were apparent from the context of the hearing.[62] Thus, Appellant has failed to preserve these various open-door theories.[63]

## II. Contrary to Appellant's claims, the record reveals he was able to meaningfully develop and argue a fabrication defense.

In his brief Appellant asserts that his "sole defense of fabrication at trial depended entirely upon the Confrontation which was denied" and that the trial court "eviscerated [Appellant's] core defense of fabrication."[64] The trial record, however, contradicts Appellant's claims and demonstrates that he was, in fact, able to develop and argue a fabrication defense.

Starting in opening statement, the defense painted the victim as "not your regular, normal 13, almost 14-year-old boy."[65] Rather, the defense suggested the victim was so calculating and driven by anger about a Nintendo DS "that he wrote a note and then, seven months later, he makes up this story."[66]

---

[61] R.R. 7:163-67.
[62] R.R. 7:163-67.
[63] *See Reyna*, 168 at 179-80; T.R.A.P. 33.1(a).
[64] *Petitioner's Discretionary Review Brief* at 3, 28.
[65] R.R. 7:20.
[66] R.R. 7:20.

14

Then, upon cross-examination of the victim, defense counsel confronted him with his anger over not receiving the Nintendo DS.[67] The defense attorney also established that the victim was aware at that time that if he made up an allegation of sexual abuse, he could get somebody in trouble.[68] During his questions on cross, Appellant also connected the timing of the victim's anger over the Nintendo DS to his outcry of abuse.[69]

In closing argument, Appellant highlighted the fabrication theory: "Joe gives this Nintendo to the church and H.H. gets mad. So here we have this kid who is all emotionally troubled, emotionally in counseling and he doesn't get what he wants and he reacts and he's irritated."[70] Thus, the record established that Appellant did develop and argue a fabrication defense:

> "The record shows that the jury had a glut of evidence by which it could be inferred that H.H. fabricated his accusation: H.H. knew such an accusation would get someone in trouble, he was mad at Johnson about the Nintendo DS, he had been caught shoplifting, he had a bad relationship with his parents, he was in counseling for his problems, and he had a pornography habit. Indeed defense counsel raised all these grounds in his closing argument to the jury and urged that they indicated H.H. was not credible; thus, *he was not prevented from presenting this defensive theory*."[71]

---

[67]  R.R. 7:146.
[68]  R.R. 7:146-47.
[69]  R.R. 7:147.
[70]  R.R. 7:95.
[71]  *See Johnson II*, 449 S.W.3d at 247. (emphasis added).

15

**III.** **Appellant has failed to show a logical nexus between the juvenile offense and Appellant's fabrication defense. Without a logical nexus, the victim's juvenile offense was inadmissible.**

**A. Appellant fails to establish a logical nexus between the juvenile offense and the fabrication defense.**

Appellant claims[72] that the victim's abuse of his sister "potentially gave the [victim] motive, means, knowledge, and opportunity to fabricate his allegation against [Appellant]."[73] While at face-value this claim sounds serious, dissecting its individual parts reveals that for each point the jury

---

[72]     Before this Court, Appellant now asserts that "the longstanding abuse and the motive, means, opportunity and knowledge it demonstrates is the issue, not the counseling the complainant received for it…Counseling has become a distraction on appeal not only because it allows the State to avoid the issues but because it was counseling that the trial court actually allowed the parties to inquire about when it barred cross examination as to the abuse.  Counseling is significant only in that it was in the course of questioning about counseling that the complainant made his revelation." *See Petitioner's Discretionary Review Brief* at 20.  Yet, in his original brief before the Second Court, Appellant stated: "The State left the false impression in the minds of the jury that the primary reason the alleged victim was in counseling was because of his strained relationship with his parents." *See Appellant's [Original] Brief*, *Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth Mar. 20, 2012) at 15.

Based upon Appellant's emphasis on the "false impression" from the State inquiring into counseling,  Justice Dauphinot drafted a memorandum opinion reversing the conviction. *See Memorandum Opinion* at 3.  Justice Dauphinot based her opinion, in part, on the State having "opened the door" to "evidence that could have accurately conveyed why the complainant was in counseling…" *See id*. at 13.

As it was Appellant and not the State who initially brought up counseling in front of the jury, the State filed a motion for en banc reconsideration pointing out that Appellant could not open his own door. *See State's Motion for En Banc Reconsideration*, *Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth Feb. 22, 2013).  While Appellant now complains about the emphasis on counseling (which he first brought up before the jury), it was Appellant's initial brief that suggested the incorrect open-door counseling theory to Justice Duaphinot. *See Appellant's [Original] Brief*, *Johnson v. State*, No. 02-11-00253-CR (Tex. App.—Fort Worth Mar. 20, 2012) at 15.

[73]     *See Petitioner's Discretionary Review Brief* at 1.

either (a) already had the information before it and the juvenile offense would have added nothing new; or (b) the juvenile offense had no logical connection to the point advanced.

**1) Motive:   Nothing in the record showed how H.H.'s abuse of his sister was connected to Appellant or supplied a motive or animus for H.H. to lodge a false claim against Appellant.**

Appellant cannot demonstrate how the victim's abuse of his sister provided him with any animus against Appellant which would supply a motive to fabricate a claim against Appellant.   There was nothing in the record to suggest that Appellant had discovered or threatened to report H.H for the abuse of his sister.[74]   The State can certainly imagine a hypothetical situation where an adult—who discovered and was going to report a juvenile molesting his sister—could thereby supply a motive for a juvenile to make a false claim against the adult either out of a motive of retaliation or to discredit the adult's report.   But, nothing in the record suggests that situation in this case or any linkage between the victim's abuse of his sister and Appellant's abuse of the victim.[75]   The record does not show that Appellant knew of H.H.'s abuse of his sister, much less that Appellant had threatened to report

---

[74]     R.R. 7:21-167; 8:5-9.
[75]     R.R. 7:21-167; 8:5-9.

17

that abuse.[76]  The record is devoid of any connection between the time Appellant was spending with H.H. and H.H.'s abuse of his sister.[77]

The only possible motives for the fabrication defense were the anger over the Nintendo DS and the desire to get attention from his parents, and these motives were inquired into and developed in front of the jury.[78]

**2) Means:   The jury heard H.H. admit that he knew making an accusation of sexual abuse could get someone in trouble.  The juvenile offense provided no additional "means" to make a false accusation.**

When asked by the defense attorney if at the time he was angry about the Nintendo he knew that he "could make an accusation of sexual abuse and get someone in trouble," Appellant agreed that he knew that.[79]  So, the jury learned that H.H. knew the seriousness of allegations of sexual abuse and the power of a false accusation and had the means to make a false accusation if he desired.  Since the jury understood that H.H. knew that a false allegation could get someone in trouble, H.H.'s abuse of his sister would have provided no additional elucidation of H.H.'s means to make a false claim against Appellant.

---

[76]     R.R. 7:21-167; 8:5-9.
[77]     R.R. 7:21-167; 8:5-9.
[78]     R.R. 7:21-167; 8:5-9; 9:90-97.
[79]     R.R. 7:146-47.

18

The State can imagine a hypothetical situation where a younger child might appear to be naïve about the power of a claim of sexual abuse; however, here H.H. admitted in front of the jury that he understood such a false claim could be used to get someone in trouble.[80] Thus, H.H.'s abuse of his sister would have added nothing new on the issue of H.H.'s means to make a false claim.

**3) Knowledge: The jury heard about H.H.'s sexual knowledge from pornography. A girl/boy sexual relationship would provide little additional information on how to a make a male-on-male claim of sexual abuse.**

Appellant's knowledge argument is also unfounded. First, the jury heard about Appellant's exposure to internet pornography.[81] So, the jury also understood that H.H. had a source of sexual knowledge (apart from Appellant's sexual abuse of him) which he could draw upon if he were making a false accusation. The defense was free to argue that pornography could have provided H.H. with the knowledge necessary to make a false claim. Thus, Appellant's claim that the jury somehow did not know that H.H. had access to an alternative source of sexual knowledge and may have believed he was sexually naïve was false.

---

[80]    R.R. 7:146-47.
[81]    R.R. 7:45,66-67,142.

Additionally, H.H.'s sexual misconduct with his sister would have provided no further enlightenment to the jury about H.H.'s sexual knowledge to make a false claim because of the disparity between the two acts. An incestuous boy/girl relationship bears little in common with male-on-male adult/juvenile sexual acts and interaction.[82] Both the internet in general and internet pornography in specific—which the jury had heard H.H. accessed— provided a far more fertile source for allegations of male-on-male adult/juvenile sexual abuse than H.H.'s incestuous relationship with his sister.[83]

### 4) Opportunity: The victim's abuse of his sister was not connected in any way to him being alone with Appellant.

Appellant also fails to explain how H.H.'s abuse of his sister had any connection to him being alone with Appellant and thus having an opportunity to make false claims of what happened when they were alone.[84] "Opportunity" is defined as "the fact that the alleged doer of an act was

---

[82] *See, e.g., Messenger v. State*, 638 S.W.2d 883, 886-87 (Tex. Crim. App. 1982) (rejecting admission of extraneous offense and noting the important dissimilarities between an adult sexual assault and the sexual assault of a child) *overruled on other grounds by Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984).

[83] Perhaps it was a defense trial strategy to not further argue that with the use of Google and a few key-strokes Appellant could find access to graphic sexual descriptions of male-on-male acts for a false allegation. (R.R. 9:90-99). Regardless, with the widespread understanding of all the sexually explicit material on the internet, this was a reasonable inference from the evidence, it was available to the jury, and the court did not prevent Appellant from making this argument. (R.R. 7:149).

[84] *See Petitioner's Discretionary Review Brief* at 20.

20

present at the time and place of the act."[85]  From a potential fabrication defense standpoint, Appellant and H.H. being alone and spending time together is what would afford H.H. the "opportunity" to make a false claim of sexual abuse, ergo if H.H. and Appellant had not spent time with each other or been alone together, H.H. would not be able to claim Appellant sexually abused him because of lack of opportunity.  The jury was certainly aware that H.H. and Appellant had spent significant time alone together, as both H.H. and his father described the extensive time H.H. spent alone with Appellant.[86]  From a legal standpoint, the time they spent alone together provided both Appellant the opportunity to molest H.H. and H.H. the opportunity to falsely claim he had been molested.  Thus, the jury knew H.H. had the opportunity to make a false claim.[87]

Conversely, nothing in the record reveals how H.H.'s abuse of his sister had anything to do with him being alone with Appellant and having the opportunity to falsely accuse Appellant of what happened when they were alone.[88]  Therefore, H.H.'s abuse of his sister was irrelevant to the issue of opportunity to make a false claim against Appellant.

---

[85]  BLACK'S LAW DICTIONARY (10th ed. 2014).
[86]  R.R. 7:28-32; 75-84.
[87]  R.R. 7:28-32; 75-84.
[88]  R.R. 7:160-163.

21

**B. The juvenile offense was properly excluded as irrelevant, as improper impeachment with specific instances of conduct, as the sexual history of the victim, and under the public policy of protecting the privacy of juvenile offenses.**

In a case where the juvenile is the victim, the federal Constitution does not confer "a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."[89] Rather, the Confrontation Clause overrules a state's policy interest in protecting the confidentiality of a juvenile's record (or offenses) only when said record is necessary to show a "particular bias."[90] The Confrontation Clause does not require "that courts permit the use of prior juvenile acts of misconduct or adjudications for general impeachment of credibility."[91]

While Appellant attempts to draw a distinction between the adjudication and H.H.'s ongoing abuse of his sister,[92] for admissibility to be

---

[89]    *Davis v. Alaska*, 415 U.S. 308, 321 (1974) (Stewart, J., concurring).
[90]    *Irby v. State*, 327 S.W.3d 138, 146-47 (Tex. Crim. App. 2010).
[91]    *Id*. at 47.
[92]    *See Appellant's Brief* at 14-15. Appellant incorrectly implies the trial judge learned additional information at the admissibility hearing (during the trial) that undermined his rationale at the pre-trial hearing. *See Appellant's Brief* at 15-16. Specifically, Appellant claims "In other words, the ultimate outcome of deliberations came down to the court's willingness to reform its pretrial ruling in light of the new facts before it. The trial court did not and gave no explanation despite the fact that the rationale for its prior ruling manifestly no longer existed." *Id*. at 18.

Carefully inspecting what the trial judge said at the pre-trial hearing rebuts Appellant's claim: "[H.H.'s] outcry was made well before the allegation of charges against the juvenile in a totally unrelated matter, I am not going to allow the Defense to get into those matters and I think that they are not relevant to the case at hand." (R.R.

22

required under the Confrontation Clause, they are the same: if the juvenile offense relates to a particular bias, it is admissible, but if it relates to general impeachment of credibility, the Confrontation Clause does not require admission.[93]

Since Appellant is not arguing "any ongoing State influence over" H.H.,[94] then the question is whether H.H.'s juvenile sexual abuse of his sister relates to a particular bias, or was just offered for general impeachment of credibility.[95]

As detailed above, Appellant cannot demonstrate that H.H.'s abuse of his sister implicates any particular bias to show motive, means, knowledge, or opportunity to allegedly make a false accusation.[96] So, Appellant has failed to show that the juvenile offense relates to a particular bias.

---

4:7). The record demonstrates the trial judge was correct: the juvenile's outcry in this case happened in November 2007, the juvenile charges were filed in May 2008, and the adjudication happened in July 2008. *See Defense Exhibit 1*, the May 12, 2008 *Original Petition*, and the July 18, 2008 *Order of Probation*; (R.R. 8:16). Nothing at the admissibility hearing during trial showed any connection between the juvenile misconduct and Appellant's sexual abuse of H.H. (R.R. 7:158-166). Thus, the trial judge was correct to exclude the juvenile misconduct. (R.R. 7:165-66).

[93] *Irby* at 47 (drawing no distinction between "prior juvenile acts of misconduct or adjudications).

[94] *See Appellant's Brief* at 14 (stating issue is about the abuse and not the adjudication); *Appellant's Response to State's Motion for En Banc Reconsideration* at 18 (stating "H.H.'s motive to lie was not predicated upon any ongoing State influence over him.").

[95] *See Irby v. State*, 327 S.W.3d 138, 147 (Tex. Crim. App. 2010).

[96] *See supra* at 16-22.

T.R.E. 412 bars admission of a sexual-assault victim's past sexual behavior unless it "relates to the motive or bias of the alleged victim" or "is constitutionally required."[97] T.R.E. 609(d) bars admission of a juvenile adjudication unless admission is required by the federal Constitution.[98] T.R.E. 608(b) prohibits impeachment of a witness by specific instances of conduct.[99] Finally, T.R.E. 402 precludes admission of irrelevant material.[100]

As Appellant cannot point to a logical nexus between H.H.'s juvenile conduct and particular bias or motive as a witness, H.H.'s juvenile conduct falls into the general impeachment category. Essentially, Appellant wants to argue "don't trust H.H. because he's a juvenile pervert." This is classic general impeachment that is prohibited by the Texas Rules of Evidence and the state's public policy of privacy for juvenile adjudications.[101]

Unfortunately, to a repeat sexual predator like Appellant who has been to prison because he picked the wrong victim in the past, a troubled victim like H.H. may present a more promising target because of his many issues.[102]

---

97      Tex. R. Evid. 412(b)(2)(C) & (E).
98      Tex. R. Evid. 609(d).
99      Tex. R. Evid. 608(b).
100     Tex. R. Evid. 402.
101     Tex. R. Evid. 609(d).
102     R.R. 9:17-26.

24

Regardless, the Texas Rules of Evidence bar general impeachment with specific acts of conduct and juvenile acts like H.H.'s juvenile misconduct because it does not relate to a particular bias or motive.[103]

## IV. The record reveals that no false impression about the victim was left with the jury.

The trial record contradicts Appellant's claims that a false impression was created about the victim. Instead, the record reveals that the prosecutor's statements were appropriate and accurate and Appellant was permitted extensive cross-examination about the victim's shoplifting, emotional issues, and pornography.

### A. The prosecutor's questions in voir dire were appropriate, general questions that related to the intelligent use of peremptory strikes.

Appellant's claim that the prosecutor somehow opened-the-door to the juvenile's misconduct or presented a false picture of the juvenile are refuted by the trial record which demonstrates the prosecutor was asking appropriate, general questions to gauge juror's feelings and beliefs about the general area of child sexual abuse.

General voir dire questions that do not delve into the specifics of the instant case are permissible for an attorney to gauge the general beliefs and

---

[103] Tex. R. Evid. 608(b); 609(d).

feelings about the type of case being tried.[104]   These general, topical questions aid the attorney in the intelligent use of peremptory strikes.[105] Because of the bizarre, often counter-intuitive dynamics that exist in child sexual abuse cases, attorneys can ask general questions that are aimed at discovering pre-existing bias or prejudice relating to child sexual abuse.[106]

Here, the prosecutor's questions were general inquiries into the prospective jurors' pre-conceived beliefs about the broad area of child sexual abuse.[107]  The prosecutor inquired into the broad topics of potential injuries from sexual abuse, DNA, general grooming behavior, and the various ways and wide range of emotions with which child victims react to sexual abuse.[108] The prosecutor never presented the facts of the instant case nor asked the jury to commit to those specific facts.[109]  These are the very type of general, topical questions that are permissible to determine a juror's general beliefs on a topic like child sexual abuse.[110]

---

[104]    *See Wingo v. State*, 189 S.W.3d 270, 272 (Tex. Crim. App. 2006).
[105]    *See Barajas v. State*, 93 S.W.3d 36 (Tex. Crim. App. 2002) ("questions that are not clearly improper on some other basis may be asked for purposes of intelligently exercising peremptory challenges subject to reasonable time limits imposed by the trial court.")
[106]    *See, e.g., McDonald v. State*, 186 S.W.3d 86, 90 (Tex. App.—Houston [1st Dist.] 2005, no pet.).
[107]    R.R. 6:16-119.
[108]    R.R. 6:16-119.
[109]    R.R. 6:16-119.
[110]    *See, e.g., McDonald*, 186 S.W.3d at 90.

Also, Appellant alleges that the prosecutor asked if a panelist's "experience confirmed a boy might be reluctant to admit it or talk about [sexual abuse]" and claimed that this question "was clearly creating a false impression because the implication is that the complainant was shy and embarrassed due to his innocence and because the prosecutor knew very well that this witness was anything but an ordinary twelve year old."[111]  First, while the State would like to respond to Appellant's point, neither of these assertions in Appellant's brief contained a record cite, so the State is unsure as to which exchange Appellant is referring.[112]

Second, in reading the prosecutor's entire voir dire, the State could not find any exchange that corresponds exactly to the one described here by Appellant's brief.[113]  In one exchange, the prosecutor asked a panelist about an adult friend who was molested in her teens.[114]  The prosecutor asked, "Was it difficult for her to talk about or was she able to?"[115]  The panelist answered, "Not really.  She didn't have very much trouble talking about it."[116]  Clearly, this exchange related to a female who didn't have any trouble

---

[111]    *See Petitioner's Discretionary Review Brief* at 22.
[112]    *See id.*
[113]    R.R. 6:16-120.
[114]    R.R. 6:51.
[115]    R.R. 6:51.
[116]    R.R. 6:51.

27

discussing abuse, so it doesn't match what Appellant describes. Additionally, Appellant did not object to this question.[117]

The State also located an exchange with a panelist who was a counselor.[118] The prosecutor asked if the counselor ever counsels "children who are willing to talk openly about it?"[119] The panelist responds "over a period of time" but implies not when counseling first begins.[120] While Appellant's brief states the "prosecutor asked if a panelist's experience confirmed a boy might be reluctant to admit it or talk about it," the record shows the prosecutor used the phrase "children" and did not limit the exchange to a "boy."[121] This entire exchange was non-gender specific, was general, and was not at all specific to the facts of this case.[122] If this is the exchange in voir dire Appellant's brief is referencing, it does not support Appellant's claims of any "false impression" and certainly did not open any doors.

At trial Appellant never once objected to any of the questions that he now claims on appeal show the prosecutor going into the specifics of the

---

[117]    R.R. 6:51.
[118]    R.R. 6:73.
[119]    R.R. 6:73.
[120]    R.R. 6:73.
[121]    R.R. 6:73.
[122]    R.R. 6:73.

instant case.[123]  If Appellant believed the prosecutor was asking improper, case-specific questions, he should have objected.[124]  Regardless, the questions Appellant references were general in nature relating to child sexual abuse cases as a category, and not tied to the specific facts of the instant case.[125]

Such questions were legally appropriate to discover the general beliefs of panelists relating to child sexual abuse. A proper line of voir dire questions does not open the door for otherwise inadmissible material at trial.[126]

**B. The prosecutor's statements in opening about Appellant and the victim were accurate and in line with what the evidence showed at trial.**

While Appellant's brief hyperbolically asserts that the prosecutor created a "false impression" and "opened any doors that could have been opened" by his opening statement and the comments about Appellant and

---

[123]    R.R. 6:16-199.

[124]    The defense did object to several commitment questions if a prospective juror only heard from one eyewitness and she believed that witness established the elements beyond a reasonable doubt, would she return a verdict of guilty.  (R.R. 6:96-97).  The court properly overruled the objections, as they were proper commitment questions. *See Lee v. State*, 206 S.W. 3d 620 (Tex. Crim. App. 2006).  Appellant has not complained about this question on appeal.  Regardless, as to the voir dire questions that Appellant references as being improper, no objection was lodged before the trial court.  (R.R. 6:16-199).

[125]    R.R. 6:16-199.

[126]    *See, e.g., U.S. v. Doe*, 903 F.2d 16 (D.C. Cir. 1990) (explaining that proper voir dire questions calculated to obtain a qualified and impartial jury do not open the door for admitting otherwise inadmissible items at trial).

H.H., actually examining the prosecutor's statements reveal they were accurate, truthful, and in line with what the evidence showed at trial.[127]

**1) The prosecutor's statements in opening regarding H.H. were true and borne out by the evidence at trial.**

Oddly, Appellant claims that the prosecutor seriously mischaracterized H.H. by asking the jury to "do [their] best to look at this through the lens of a 12, 13-year-old boy…before, during, the abuse and after…"[128]

The testimony at trial revealed that H.H. was, in fact, 12-almost-13 at the time of the offense.[129] Webster's Dictionary defines "boy" as "a male child from birth to adulthood; an immature male."[130] Thus, the prosecutor was accurate and truthful when he spoke of H.H. as a 12-or-13-year-old boy. Boys process and handle things differently than do men. Also, at the time of trial, H.H. was 17, four years older than at the time of the offense.[131] The prosecutor was asking the jury to remember H.H.'s age at the time of the offense, which was later admitted without defense objection.[132]

---

[127]    *See Petitioner's Discretionary Review Brief* at 23.
[128]    R.R. 7:16.
[129]    R.R. 7:23.
[130]    WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2004).
[131]    R.R. 7:23.
[132]    R.R. 7:23.

This was certainly relevant and proper as H.H.'s age at the time of the offense of "younger than 14" was an element of the crime the prosecutor was required by Texas law to prove.[133]

Appellant asks the Court to adopt a strange rule: by referring to an element of the charged offense, the prosecutor "opened any doors that could possibly open."[134]  Clearly, Texas law must require more to open a door to juvenile misconduct than simply referring to an element of the charged offense in opening statement.

2) **The prosecutor's statements about Appellant were true and borne out by the evidence at trial.**

Appellant acts shocked that the prosecutor would refer to him as cunning, opportunistic, and deceitful and would ask the jury to consider whether the relationship between Appellant and H.H. was normal or whether it was a "deviant, perverted relationship."[135] This shock is misplaced because the prosecutor's statements were true and borne out by the evidence and when considering the nature of the charged crime.

---

[133]     C.R. 6.
[134]     *See Petitioner's Discretionary Review Brief* at 23.
[135]     R.R. 7:16.  While Appellant's brief implies the prosecutor referred to Appellant in opening as a "deviant pervert," the record actually shows the prosecutor was questioning the nature of Appellant's relationship with H.H. and whether it was a "normal" mentor/mentee relationship or whether it was a "deviant perverted relationship."  (R.R. 7:16).  The context is clear the prosecutor was asking the jury to listen to the evidence to determine the nature of their relationship.  (R.R. 7:16).  At any rate, Appellant did not lodge an objection to the prosecutor's question.  (R.R. 7:16).

First, the prosecutor's statements in opening that Appellant was cunning, opportunistic, and deceitful were confirmed by the evidence at trial. The testimony revealed that Appellant used the youth group at church to get close to H.H.[136] Appellant then offered H.H. money to mow his yard, further creating opportunities for them to be around each other.[137] Appellant offered a trip to Six Flags, took H.H. to multiple movies, hockey games, and out to eat in developing their relationship.[138] Appellant insinuated himself into H.H.'s life as "an uncle figure" who was "more like family."[139] Appellant then began to ask H.H. to "trust him more" accelerating the intimacy and secrecy of the relationship.[140] All of this grooming behavior culminated with Appellant sexually propositioning H.H.[141]

It is a truism to say that a man who uses his church youth group as a place to meet a twelve-year-old boy, showers the boy with attention and favors, intentionally develops the intimacy of the relationship all so that he can sexually proposition the boy is cunning, deceitful, and opportunistic.

---

[136]. R.R. 7:26.
[137]. R.R. 7:28.
[138] R.R. 7:29-32,78.
[139] R.R. 7:79.
[140] R.R. 7:79.
[141] R.R. 7:84.

32

To rebut Appellant's theory of fabrication, the jury heard from a previous victim about Appellant's pattern of predation.[142] Appellant used a similar method of attention and promises to sexually proposition and rape that boy when he was 13.[143] Specifically, Appellant groomed that child by taking him swimming.[144] Then, in exchange for the promise of a dirt bike, Appellant had the boy fellate him.[145]

Finally, the jury heard testimony from Appellant's former close friend, Bradley Hilbers. Mr. Hilbers related a time when he was helping Appellant clean out a storage shed with Appellant's items and they came across a "box full of pictures…of [Appellant] and young boys from church in it."[146] Upon coming across the pictures, Appellant had Mr. Hilber's wife shred the photos.[147] Appellant acknowledged to Mr. Hilbers that these were pictures of the boy "he was accused of molesting."[148]

---

[142]   R.R. 9:16-26.  While Appellant obliquely complains in his brief on the merit's about the admission of the testimony of Appellant's rape of a previous boy, Appellant failed to raise this issue in his petition for review and has, thereby, waived this complaint. *See Appellant's Petition for Discretionary Review; see also* Tex. R. App. P. 68.4(f)(g) (requiring the petition to contain a specific, separate listing of each ground for review and an argument, with supporting authorities, amplifying said grounds).
[143]   R.R. 9:19-26.
[144]   R.R. 9:19-21.
[145]   R.R. 9:24.
[146]   R.R. 9:63.
[147]   R.R. 9:63-64.
[148]   R.R. 9:63-64.

33

Thus, as predicted by the prosecutor in opening statement, the evidence revealed Appellant to have used his churches' youth group to meet H.H., to have escalated the relationship through movies and hockey games and mowing, to have developed intimacy with H.H., all with an eye toward sexually propositioning H.H. Clearly, the evidence confirmed the prosecutor's guidepost at opening: Appellant was cunning, deceitful, and opportunistic in pursuing and molesting H.H.

In fact, the nature of the charged offense of aggravated sexual assault on a child younger than fourteen implies as much. By law, a sexual relationship between a 12-year-old boy and an adult male is a "deviant, perverted relationship" such that it is punishable by up to Life in prison.[149]

Once again, Appellant asks this Court to adopt a strange rule: by mentioning what evidence he expected would prove the charged crime—that an adult male preyed upon and raped a child younger than fourteen—the prosecutor opens any door that could be opened relating to the victim's juvenile offense.[150] Texas law must require more than a mere recitation of the nature of the charged offense to open a door to a juvenile offense. The prosecutor's statements in opening were true, accurate, borne out by the

[149] *See* Tex. Pen. Code 22.021(e).
[150] *See Petitioner's Discretionary Review Brief* at 23.

34

evidence, and nothing more than a statement of the nature of the charged offense. As such, the prosecutor's opening statement opened no door.

### C. No contradiction existed between H.H. feeling more strongly a wrong done to him than one he did to someone else. Rather, this is simple human nature.

Appellant's allegation that H.H. created a false impression by contradicting himself ignores basic human nature. Specifically, Appellant contends that the jury had a false impression about H.H. because he told the jury he felt a weight off his shoulders when he finally disclosed Appellant's abuse of him, but outside the presence of the jury, he told the judge he felt "minute guilt" over his abuse of his sister.[151] In claiming that this is contradictory (and thus created a false impression), Appellant overlooks the basic human condition.

As Aesop observed thousands of years ago, "The injuries we do and those we suffer are seldom weighed in the same scales." Aesop teaches that it is innate to humans to feel strongly wrongs done to oneself, but quite easy to rationalize and justify the wrongs we do to others. Thus, no inherent contradiction existed between H.H. feeling relief about disclosing Appellant's sexual abuse of him, but of H.H. minimizing his guilt over his abuse of his sister and no false impression was left with the jury.

---

[151] *See Petitioner's Discretionary Review Brief* at 25.

35

**V.    As the juvenile probation was discharged in July 2010, the State had no ongoing influence over the witness; thus, the concerns of the _Irby_ dissent relating to influence from a probation relationship are not implicated here.  Appellant has candidly conceded this point.**

In _Irby_, the dissent raised concerns about the admissibility of a juvenile witnesses' probationary relationship because of the influence by the State that such a relationship can create.[152]  The dissent agreed with the majority that "a juvenile's prior juvenile adjudication ordinarily should not be used to attack the juvenile's credibility in either a civil or criminal trial."[153]  The dissent, however, drew a distinction between a general attack on the credibility of a juvenile witness with a prior offense or adjudication (which it believed to be impermissible), and a "particular attack" focused on revealing a bias that comes from the relationship between the State and the juvenile witness as a result of the juvenile probation.[154]  When the juvenile probation relationship raises concerns about the influence of the State over a juvenile witness, the dissent believed this "particular attack" would then be admissible on cross-

---

[152]    _See Irby_, 327 S.W.3d at 160 (Tex. Crim. App. 2010) (J. Holcomb, dissenting) (expressing concern because of the juvenile's probationary record establishes a relationship between the juvenile witness and the State that "raises a question about his partiality in testifying for the State, which also supervises him as a probationer.").
[153]    _See id_.
[154]    _See id_. at 157.

examination to show the relationship between the State and the juvenile witness.[155]

Here, the juvenile probation was discharged almost a year before the trial.[156]   Thus, at trial, the State had no ongoing influence over H.H. Consequently, Appellant has conceded that he is not basing his appeal "upon any ongoing State influence" over the juvenile victim based upon the victim's juvenile probation.[157]   In his brief on the merits, Appellant asserts: "This Issue is About the Abuse not the Adjudication."[158] In addition to the fact that the probation had been discharged well before the trial, the outcry in this case was made months before the juvenile charges:  the juvenile's outcry in this case happened in November 2007, the juvenile charges were filed in May 2008, and the adjudication happened in July 2008.[159]   So, the outcry occurred months before any probation or State influence over the juvenile.[160]

Thus, the concerns articulated by the dissent in *Irby* are not implicated in this case as H.H.'s outcry occurred months before the juvenile charges

---

[155]   *See id.*
[156]   R.R. 4:5.
[157]   *See Appellant's Response to State's Motion for En Banc Reconsideration*, *Johnson v. State,* No. 02-11-002530-CR (Tex. App.—Fort Worth May 12, 2014) at 18. ("H.H.'s motive to lie was not predicated upon any ongoing State influence over him.").
[158]   *See Petitioner's Discretionary Review Brief* at 14.
[159]   *See Defense Exhibit 1*, the May 12, 2008 *Original Petition*, and the July 18, 2008 *Order of Probation*; R.R. 8:16.
[160]   *See id.*

and the juvenile probation was discharged nearly a year before the trial in this cause.[161] Since Appellant is not arguing "any ongoing State influence" over the juvenile,[162] his desire to use the juvenile's misconduct constitutes a general attack on the juvenile's credibility which the dissent in *Irby* also rejects as being improper.[163]

Therefore, not only does Appellant fail the "logical nexus" test of *Irby*,[164] but he also would fail the *Irby* dissent's "particular attack" test because Appellant has conceded that he is not claiming a bias or motive existed by any ongoing influence of a probation relationship between the juvenile and the State.[165]

### Prayer

The State prays that the Court deny Appellant's points and affirm the judgment of the en banc majority of the Second Court of Appeals.

Respectfully submitted,

**Maureen Shelton**
Criminal District Attorney
Wichita County, Texas

---

[161] *See id*.; R.R. 4:5.
[162] *See Appellant's Response to State's Motion for En Banc Reconsideration*, *Johnson v. State,* No. 02-11-002530-CR (Tex. App.—Fort Worth May 12, 2014) at 18.
[163] *See Irby*, 327 S.W.3d at 157-58.
[164]. *See supra* at 16-21.
[165] *Appellant's Response to State's Motion for En Banc Reconsideration*, *Johnson v. State,* No. 02-11-002530-CR (Tex. App.—Fort Worth May 12, 2014) at 18.

 /s/John Gillespie

**John Gillespie**
First Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 24010053
John.Gillespie@co.wichita.tx.us

/s/Carey Jensen

**Carey Jensen**
Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 24083252
Carey.Jensen@co.wichita.tx.us

900 Seventh Street
Wichita Falls, Texas 76301
(940) 766-8113 phone
(940) 766-8177 fax

**Certificate of Compliance**

I certify that this document contains 8,735 words. The body text is in 14 point font, and the footnote text is in 12 point font.

/s/John Gillespie
**John Gillespie**

**Certificate of Service**

I certify that on June 19, 2015, a true and correct copy of the above document has been forwarded Jeff Eaves, via electronic service to eaveslaw@att.net, Todd Greenwood via electronic service to toddgreenwood@lawyer.com, as well as the State Prosecuting Attorney, Lisa C. McMinn, via electronic service to information@spa.texas.gov.

/s/John Gillespie
**John Gillespie**